MEMPHIS AND CHARLESTON RAILROAD COMPANY v. JOHN W. BLAKENEY.

1. RAILROADS—LIABILITIES FOR DAMAGES.—A party seeking damages against a railroad company for injury to cattle on the track, must, under the Revised Code of 1857, page 299, art. 43, show that the injury resulted from some mismanagement on the part of some of the servants or agents of the company.    Raiford v. Miss. Central R. R. Co., cited and approved.

2. SAME.—Railroad companies, having exclusive right of way along their road, must so use their possession as not, by mismanagement or neglect, to injure the rights of others. And if owners of stock suffer them to run at large, knowing their liability to got on the tracks, and the rights of the companies, such owners must assume, at least, some of the risk.

Error to the circuit court of Tishomingo county.—BRAD-FORD, J.

*Inge & Beene*, for plaintiff in error.

It is incumbent upon the appellee to establish, by competent proof, negligent misconduct upon the part of the appellant, or their agents, before he can recover, and the injury itself is not, *prima facie*, evidence of negligence. Miss. C. R. R. Co. v. Miller, 40 Miss. R., page 47 ; Terry v. N. Y. C. R. R. Co., 22 Barb. R., p. 574; Herring v. Wil. & Ral. R. R. Co., 10 Iredell R., p. 402 ; Gal. & Chicago Union R. R. Co. v. Loomis, 13 Ill. R., p. 548; Cen. R. R. Co. v. Reedy, 17 Ill. R., p. 580; Waldron v. Portland S. & P. R. R. Co., 35, Maine R., p. 422; S. C. R. R. Co. v. Danner, 4 Rich. R., p. 329; Pierce on American R. R. Law, p. 357; 1 Hilliard on Torts, pp. 125 and 126.

The evidence shows that at the time of the accident, the appellant was running the cars with such care and prudence as a prudent man would observe, to prevent such injury, and this is all the law required of appellant. 40 Miss. R., pp. 47–8; Miss. C. R. R. Co. v. Miller; Vick. & Jack. R. R. Co. v. Patton, 31 Miss. R., p. 191.

There is nothing in the testimony showing negligence on the part of the defendant in the court below. Reasonable care and prudence only in running their trains are required.

Vick. & Jack. R. R. Co. v. Patton, 31 Miss. R., p. 196; Miss. C. R. R. Co. v. Miller, 40 Miss. R., p. 48; Pierce on American R. R. Law, pp. 331, 332; Knewland v. C. C. & C. R. R. Co., 3 Ohio State R., p. 199; same v. Elliot, 4 Ohio State R., p. 474; Cranston v. C. H. & D. R. R. Co.; 1 Handy (Sup. City Court Cin.), 193; Chicago & Miss. R. R. Co. v. Pitchin, 16 Ill., p. 198; Williams v. Mich. Cent. R. R. Co., 2 Gibb, p. 249; Tonawanda R. R. Co. v. Munger, 5 Denio, 256; 4 Comst., 349.

Where the exercise of prudence and precaution would be of no avail to prevent the accident, the railroad company was not bound to exercise it, although they did so on this occasion. Pierce on American R. R. Law, 333; Vick. & Jack. R. R. Co. v. Patton, 31 Miss., p. 156.

Tarbell, J.:

This suit was brought in the county court of Tishomingo, in 1867, to recover the value of two cows killed by the cars of the plaintiff in error, in April of that year. At the August term, 1868, a trial resulted in a verdict for the plaintiff below, the jury assessing the value of the cows at $80. A motion for a new trial was overruled. On a hearing on appeal in the circuit court, the judgment of the county court was affirmed, and thereupon a writ of error was taken to this court. The bill of exceptions discloses the following facts:

W. R. Smith, a witness for plaintiff, testified that in April, 1867, he heard the cars of the Memphis and Charleston Railroad Company coming; heard the whistle once or twice, and then heard no more; thought the cars had run off the track; went down there, a very dark night, and took a lantern; found two cows by the side of the track, bruised and mangled, as if they had been run over by the cars. One was lying thirty steps beyond the west end of the trestle, and the other about thirty steps further west; and going up the road about eighty yards further, found a third cow wounded. The train was going west, and moved off about the time he got to the road. He was three or four hundred yards from the

road when he heard the whistle; thinks the whistle sounded before the cars crossed the trestle. The road for one hundred and fifty yards east of the trestle is about level. The trestle is eighty yards long. One hundred and fifty yards east of the trestle a grade in the road commences and runs back one-fourth of a mile. Where the grade begins it is pretty steep, but gradually lessens toward the trestle, till within about one hundred and fifty yards of the trestle, when it becomes level.

Solomon Jones, a witness for the plaintiff, testified that at the moment of the accident he was one hundred and fifty yards northwest therefrom; heard the cars coming and heard the whistle; cars stopped and he went down. When he arrived they were throwing off a wounded cow. About forty yards east of this he saw another cow, dead; about thirty yards still further, saw a third cow, dead. It was daylight down; the moon was shining. The road was straight for over a quarter of a mile east from the accident. The road was level for about one hundred and fifty yards east of the accident, then up grade for one-fourth of a mile. The trestle is about eighty yards long. The road bed is clear of obstructions, but two feet from the ties the briers and bushes are thick—cows could run off the track by going through the briers.

John W. Blakeney, plaintiff, testified that two of the cows belonged to him—worth $45 and $35; total, $80.

Frederick Blakeney testified same as John W. Blakeney.

The defendant then introduced the engineer of the train in question, who testified that he was looking ahead for cattle; had a good headlight; of a bright night a headlight will not show more than fifty yards; it shows much farther on a dark night; did not see the cows till in about fifty yards of them; immediately sounded the signal to put on brakes; knows the brakes were set because he felt the cars check; then immediately sounded the alarm whistle, and kept blowing to drive the cows off the track; thinks it was a bright night, but if the moon was shining, the spot where the cows were stand-

ing was shaded, as the moon was not shining where the cows were; the cows were thirty or forty yards from the west end of the trestle, on the track, when they were discovered; nothing could prevent striking them; was within fifty yards of them on an engine with four cars attached; could not be stopped on a level road short of one hundred and fifty to one hundred and eighty or two hundred yards; one quarter of a mile east of trestle a considerable down grade begins and continues to about where the cows were killed; was near the western end of trestle when first sounded alarm, about fifty yards from cows.

The conductor of this train testified that he set the brakes of one car immediately after the signal was sounded, and the brakesman set another; the alarm was also immediately sounded; an engine cannot be stopped with four cars attached, under one hundred and fifty yards; were running twenty miles an hour, schedule time.

Here the testimony for defendant closed, and this is all the material testimony in the case. As to the condition of the road, the witnesses substantially agreed. In fact, there was no essential difference or conflict between any of them.

All the instructions asked were given, one for plaintiff, eight for defendant, without objection or exception by either party.

A motion for a new trial on the ground that the jury found contrary to law and the testimony, was overruled, to which defendant excepted.

The jury could have derived little benefit from the instructions in this case. Indeed, the only legitimate instructions were so involved with unnecessary, if not improper, propositions, and these in such mischievous numbers, that the real questions for their consideration could scarcely have been understood by them. But as neither party objected or excepted, we shall consider only the question raised by the motion for a new trial, to-wit: Is the verdict in this case contrary to the law and the testimony?

1. *The law.* Numerous decisions have defined the law

beyond controversy. It is no longer open to discussion. So numerous and so uniform have been the decisions that it has been, almost literally, "line upon line, and precept upon precept," so that railroad companies and residents along their roads, ought, by this time, to be well informed of their respective rights and duties.

Article 43, p. 299 of the Revised Code is as follows:

"Every railroad company shall be liable for all damages which may be sustained by any person in consequence of the neglect or mismanagement of any of their agents, engineers, or clerks, or for the mismanagement of their engines."

In an exhaustive opinion by a learned Associate, at the present term, the opinion of this court is thus stated:

"A party asking damages under the 43 article of Rev. Code (above cited), must show some mismanagement or neglect on the part of the servants of the company, and that the injury resulted therefrom." Raiford v. Mississippi Central Railroad Company. Opinion by Simrall, J.* It was incumbent, therefore, upon the plaintiff below as a condition of recovery, to prove that his cows were killed through the mismanagement or neglect of the Company's servants.

2d. *The facts.* The plaintiff below did not attempt, nor does the evidence adduced by him tend to show mismanagement or neglect to be the immediate or remote cause of the accident, but rather the reverse.

So far as we can judge from the record there was no conflict of evidence, but the statements of the witnesses appear to have been accepted as undisputed truths. The plaintiff's witnesses do not attach, nor do they attempt to attach, blame to defendants or their servants, and were in fact not present at the moment of the accident, but fix the killing by circumstances. When the plaintiff rested his case, he had not established his right to recover, because he had not established mismanagement or neglect on the part of defendant's servants.

Nevertheless, defendants introduced the engineer and con-

* See *infra*, p. 233.

ductor of the train, who testified without contradiction the one that he was on watch for stock, and as soon as discovered, sounded the signal to put on the brakes, and the other, that the brakes were put on in response to the signal, with other particulars of an effort to check the train and prevent an accident. That the plaintiff failed to prove mismanagement or neglect, and that the defendants prove positive prudence and care, seem to be undeniable, if not conceded facts. The conclusion that the verdict in this cause was contrary to law, and the testimony, seems to be irresistible. Apparently, the only argument against the reversal of the judgment is, that the verdict of a jury ought to be final.

If there was a conflict of evidence—if the facts were disputed, and the testimony contradictory, we should hesitate to disturb the findings of a jury of the country. But we are not left in doubt, either as to the law and the facts, or as to the justice of this case as presented by the record. Without traveling over doctrines which have been frequently and ably elucidated, we shall only remark here, that the opinion of Mr. Justice Simrall in Raiford v. Miss. C. R. R., settles the rights of parties to this character of cases upon the only basis of justice and sound policy. The railroad company has the exclusive right of way. If it chooses not to fence in its land, it must so use its possession as by proper care and prudence, or at least, that by mismanagement or neglect, it shall not endanger or injure the rights of others. At the same time, if owners of stock along these lines of railway, choose to suffer their animals to run at large, knowing the rights of the railroad companies, and the danger of getting upon the track, they must, at least, assume some of the risk of thus suffering their cattle to roam. While the local residents have not such immunities as to obstruct the running of the trains, the railroad companies on their part must not be guilty of mismanagement or neglect.

Two or three early cases, familiar to the profession, by their repetition in elementary works, though not directly in point, nor necessary even, may serve to illustrate and enforce

the justice of the rules established with reference to the rights of parties to accidents by railroads, of the character of the case at bar. If a " gratuitous bailee, who puts his brother's horse into a pasture with his own cattle, in the night time, and the horse, through a defect in the fences, fall into a neighboring field and is killed, is responsible, because it was gross negligence to put a horse into a dangerous pasture to which he was unused ;" or, if " a child of such tender age as not to possess sufficient discretion to avoid danger, is permitted, by its parents, to be in a public highway, without any one to guard it, and is there run over by a traveler and injured, no action lies against the traveler, if there be no pretence that the injury was voluntary, or arose from culpable negligence on his part," with how much greater reason shall the owner of stock, permitting it to wander on the railroad track, knowing the exclusive right of way of the company, and the dangerous character of railway trains, be held to risk it thus, and bear the loss, so long as the company exercises care and prudence, or at least, unless its servants are guilty of mismanagement or neglect. It is laid down by Mr. Justice Sutherland, as an established principle, that " where an injury is occasioned by an unavoidable accident, no action will lie for it'; but that where any blame is imputable to either party, though he had no intention to injure the other, he is liable for the damages sustained." " When we speak of an unavoidable accident," says the same judge, " in legal phraseology, we do not mean an accident which it was physically impossible, in the nature of things, for the defendant to have prevented ; all that is meant, is that it was not occasioned, in any degree, either remotely or directly, by the want of such care or skill as the law holds every man bound to exercise." " This is well illustrated," he continues, " by the case of Wakeman *v.* Robinson, 1 Bingham, 212 ; defendant there was guilty of both negligence and unskillfulness. His horse was young and spirited, and he drove him without a curb-chain, in consequence of which he was less easily managed ; in that, there was negligence. In his alarm, the de-

fendant pulled the wrong rein. There was want of skill; and on either or both grounds, he was responsible for the consequences. But if his horse had been properly harnessed and skilfully managed, and the accident to the plaintiff had still occurred, it would have been held inevitable; although no one will question that the defendant had the physical power to have guarded against it, either by entirely stopping his horse the moment he saw the plaintiff's wagon, or by driving at a very slow and moderate pace; but," the learned Judge concludes, " this is a degree of caution the law does not exact." Edwards on Bailments, p. 599; Percival v. Hickey, 19 John. R., 289; 18 ib., 383; 3 Wend., 391; Bromwell v. Flagler, 5 Hill, 282.

" Justice," says an eminent writer, " is the rendering to every man his due." To hold the scales evenly, between all parties, whether rich or poor, strong or weak, is the delicate, and difficult task of the impartial judge, as it should be no less his ambition so to dispense justice as to suppress litigation. If railroad companies and those with whom they come in contact, in their extended lines of operation, can be made to understand and practice the obligations resting upon them, it will be a " consummation devoutly to be wished." In the case at bar, as presented by the record, our duty is plain.

The judgment of the court below is reversed, and a *venire de novo* awarded.